(30 App. Div. 339.)

## In re WHANN et al.

(Supreme Court, Appellate Division, First Department.   March 17, 1899.)

GREATER NEW YORK—BONDS—CORPORATE STOCK.

Greater New York Charter (Laws 1897, c. 378) § 172, provides that stocks and bonds theretofore lawfully issued by any of the consolidating municipalities for payment of which the new city is liable, may be registered, and that the holders of any such stocks or bonds which have been issued in coupon form, and of the corporate stock of the new city thereafter issued, may convert the same into registered stocks or bonds, which the comptroller is authorized to issue therefor, and to detach the coupons therefrom, indorsing the fact of registration.   Section 169 exempts from local taxation all stock or bonds issued by the new city after January 1, 1898.   No such exemption attached to bonds issued by the consolidating municipalities prior to such date.   *Held*, that holders of the latter bonds were not entitled to have them exchanged for original corporate stock of the new city of the same terms as the bonds, though corporation counsel had advised the comptroller that such bonds were valid.

Appeal from special term, New York county.

Application by Charles Whann and another for a writ of mandamus to compel Bird S. Coler, comptroller of the city of New York, to issue to petitioners registered stock of said city in exchange for bonds of the late village of Richmond Hill.   From an order denying the application, petitioners appeal.   Affirmed.

The following is the opinion of the court below (SCOTT, J.):

The petitioners are the owners of $35,000 of coupon bonds issued by the late village of Richmond Hill, in the county of Queens, one of the municipalities which has now become incorporated into the city of New York.   No question is made in this motion as to their validity.   They were issued prior to January 1, 1898 (the date of consolidation), and were on that day, as is assumed, valid outstanding obligations of said village.   The applicants have demanded of the comptroller that he accept a surrender of these bonds, and in place thereof issue to them registered stock of the city of New York, in the manner and form that said bonds would have been if originally issued as registered bonds.   The comptroller has refused to comply with this demand, but offers to pursue the same course respecting these bonds which he pursues respecting other similar bonds, which is to receive them and cut off the coupons, then to register the bonds, and indorse thereon the fact of such registration, and return or reissue them to the owners.   This course is not satisfactory to the applicants, who insist that they are entitled to surrender their bonds for cancellation, and to receive in return, not the same bonds with a certificate of registration indorsed thereon, but original corporate stock of the city of New York, of like terms as to amount, rate of interest, and time of payment as the bonds so surrendered and canceled.   The city of New York, as at present constituted, was formed by the consolidation of a great number of large and small municipalities, each one of which had issued bonds, which, at the date upon which consolidation became effective, were outstanding obligations.   The section of the charter of Greater New York (Laws 1897, c. 378) under which this application is made reads as follows:

"Sec. 172. All stocks and bonds heretofore lawfully issued by any of the municipal or public corporations or parts thereof which have heretofore been annexed to or consolidated with the corporation known as the mayor, aldermen and commonalty of the city of New York, or which by this act are made part of the corporation of the city of New York as hereby constituted, including the counties of Kings and Richmond, for the payment of the principal and interest of which the city of New York is liable, may be registered and must be recorded by the owners thereof in the comptroller's office in said city, and shall be transferable at the pleasure of the holder, either in person or by attorney, only upon the books of the corporation in said office, and subject to such reasonable rules

and regulations as the comptroller may prescribe, such registry and transfer to
be indorsed thereon by the comptroller. Whenever such stocks or bonds have
been issued in coupon form, and whenever hereafter corporate stock of the city
of New York may be so issued, it shall be the privilege of the holders thereof at
any time, subject to such rules and regulations, to convert the same into regis-
tered stock or bonds, and the comptroller is hereby authorized to issue registered
stock or bonds therefor in the manner and form in which the same would have
been conditioned if originally issued in registered form. The interest on all
such stocks and bonds when so registered shall, as the same becomes due and
payable, be paid in like manner as upon other registered stocks and bonds of
the city of New York; and, whenever any such stocks or bonds have coupons
attached, the comptroller shall, upon registration thereof, have authority to
detach all coupons therefrom, and shall thereupon indorse the fact of such regis-
tration, with a reference to this section."

It is apparent that this section was designed to provide for two sets of condi-
tions which might arise in the future: First, the owners of coupon bonds or
stock which "have been issued"—i. e. issued prior to January 1, 1898—might
wish to have them converted into registered stock or bonds; and, secondly, the
owners of corporate stock of the city of New York which "may be hereafter"
—i. e. after January 1, 1898—so issued might wish to have them so converted;
and it is obvious that the legislature has attempted to provide for both of these
cases in a single section. In the main the section is a re-enactment of section
138 of the consolidation act (Laws 1882, c. 410), which in turn was a re-enact-
ment of section 1, c. 199, Laws 1880, which was an act providing for the regis-
tration of the bonds of the towns of Morrisania and West Farms which had
been issued before these towns had been annexed to the mayor, aldermen, and
commonalty of the city of New York. It has never been contended that under
the statute the holders of West Farms and Morrisania bonds had the right to
surrender them, and insist upon the issue of original city stock. The applicants
insist, however, that the provision inserted in the act of 1897 that the comp-
troller shall "issue" registered stock or bonds in place of the coupon stock or
bonds, which words were not contained in the act of 1880, confers a new right
upon the holders of coupon bonds. It would be a narrow construction of the
section which would give to this single provision the controlling effect which
is sought to be attached to it. As has been said, the section provides for two
possible contingencies, and such effect should be given to it as will meet both
cases. In the case of the conversion of corporate stock issued after January 1,
1898, the comptroller might, without affecting the relations between the city
and its creditor, cancel the coupon stock, and issue new registered stock. To
cancel stock or bonds issued prior to January 1, 1898, and issue new corporate
stock, might, however, very seriously affect the relations between the city and
the bondholder. Section 169 of the Greater New York charter provides that all
bonds or corporate stock issued by the city of New York after January 1, 1898,
shall be exempt from all taxation except for state purposes. No such general
exemption attaches to the bonds issued prior to January 1, 1898, by the numerous
municipalities which on that date became merged into the city of New York.
Just how many of such bonds are outstanding does not appear by the motion
papers, but it is a matter of common knowledge that there are a very large
number of them, and it was stated on the argument that they amounted to some
millions of dollars. Whatever the amount, nothing but the plainest language
would justify the improbable conclusion that the legislature intended, as a result
of consolidation, to confer upon the holders of these bonds the gift of perpetual
exemption from local taxation, an advantage which was not in contemplation
when the bonds were issued. It is also to be considered that the Greater New
York charter imposes upon the city of New York only the obligation to pay
those bonds of the constituent municipalities which had been lawfully issued.
If such bonds are surrendered and canceled, and new corporate stock be issued
in exchange therefor, the city would be deprived of any opportunity to contest
the validity of such bonds, if reason for doing so should hereafter be discovered.
Of course, the probability of such a discovery is slight, but it cannot be said
to be nonexistent. It is stated in the moving papers that an investigation into
the validity of these particular bonds had been made under direction of the cor-
poration counsel, and that he has advised the comptroller that from such investi-

gation it appears that the bonds are valid. I do not understand this to have been a judicial investigation, and, while it is sufficient .to justify the comptroller in recording the bonds and paying interest thereon, I know of no principle upon which it can be held to estop the city from setting up any legal defense, if, in the future, such a defense should be found to exist. It will be seen that the cancellation of these bonds and the issue of new corporate stock in their place would involve consequences which it is not to be presumed the legislature intended, and the letter of the section referred to does not demand such a construction. The privilege accorded to the owners of such stock is to "convert" their coupon bonds into registered bonds. There is not a single word in the section as to "exchanging" coupon for registered bonds, or as to "surrendering" such bonds, or as to the duty of the comptroller to "cancel" them. They may be "converted," and the method of their conversion is prescribed in the last clause of the section. The comptroller is authorized to "detach all coupons therefrom, and [he] shall thereupon indorse the fact of such registration with a reference to this section." It is this act of cutting off the coupons and indorsing the fact of registration upon the bonds which "converts" them from coupon to registered bonds; and, if it be necessary to give effect to every word in the section, it would do no violence to the language to say that when he had thus transformed the bonds, and redelivered them to the owner, he had "issued" registered bonds for the coupon bonds which had been presented to him. The manifest intention of the section was not the exchange of one bond or security for another, but. merely a change in the method of paying principal and interest on the same bond; simply the transformation of the same bond from coupon to registered form. The motion for a mandamus is denied, with $10 costs.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

G. L. Sterling, for appellant.
J. H. Caldwell, for respondent.

PER CURIAM. Order affirmed, with costs, on the opinion of SCOTT, J., in the court below.

---

_(40 App. Div. 242.)

WALDMULLER et al. v. SEASIDE & B. B. EL. R. CO. et al.

(Supreme Court, Appellate Division, Second Department. May 8, 1899.)

1. STREET RAILROADS—ELEVATED STATION IN STREET—RIGHT TO ERECT.
     A street-railway company cannot erect an elevated structure in a street for the storage of its cars or accommodation of its trainmen, to the injury of an abutter.

2. SAME—CLEANING CARS IN STREET—INJUNCTION.
     Where a street-railway company's charter prohibits it from washing its cars in a street, an abutter may have it restrained from so doing.

Appeal from special term.
Action by John P. Waldmuller and another against the Seaside & Brooklyn Bridge Elevated Railroad Company and others. From a judgment for defendants, plaintiffs appeal. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, and WOODWARD, JJ.

· Henry G. Atwater, for appellants.
Alex. S. Lyman, for respondents.

HATCH, J. The plaintiffs are owners of certain premises on Crescent avenue, in the borough of Brooklyn, such premises being oc-